## PERRY *vs.* ALDRICH.

At common law, rent payable on a specified day could not be apportioned as to a part of the time.

The plaintiff, being tenant of land *pur auter vie,* leased it to the defendant during the life of the *cestui que vie* at an annual rent, payable on the first day of April in each year. The *cestui que vie* died on the 15th day of October, 1841.—*Held,* that the plaintiff could not recover of the defendant the rent which accrued from the first day of April to the 15th day of October, 1841.

*Held,* also, that the *Statute,* 11 *Geo. II., ch.* 19, *sec.* 15, which provided that where a tenant for life and lessor died before the day on which the rent was payable on any demise which determined on his death, his executors might recover of the under-tenant a proportion of the rent, did not apply to this case, so as to enable the plaintiff to recover.

DEBT, for rent. The case was submitted for the opinion of the court upon the following facts.

On the 9th day of December, 1831, the plaintiff owned an estate in the land for which rent is alleged to be due, during the life of Isabella Perry, and on the same day he leased the land to one Marcellus Aldrich, to hold during the life of Mrs. Perry, from the first day of April, 1832. The lessee covenanted for himself, his heirs and assigns, that he would pay the plaintiff " the clear yearly rent of fifty dollars, to be paid by yearly payments." Before the rent for which this suit is brought became due, Sylvester Aldrich, the defendant, became assignee of the term, and liable for the rent. The rent was paid to the first day of April, 1841, and Mrs. Perry

died on the 15th day of October, 1841, and this suit is brought to recover the rent which accrued from the first day of April to the 15th day of October.

It was agreed that judgment should be rendered for the plaintiff, or for the defendant, according to the opinion of the court.

*Handerson*, for the plaintiff. The only question submitted to the court is, whether the rent can be apportioned, and the plaintiff recover from April to October, at the rate of $50 per year. On recurring to the old law upon this subject, I think it will be found that in early times it was held, that no rent could be recovered when it was payable on a certain day, and that day not arrived, when, by the death of the person on whose life the rent depended, the rent had ceased. This was manifestly unjust, as it would enable a tenant to enjoy the land to the end, or within a day of the end of the year when the rent became payable, without paying any thing. To remedy this, the *Statute* 11 *Geo. II., chap.* 19, was passed, which apportions the rent, and makes the tenant liable for the time he has occupied, at the rate he was to pay by the year, or such proportions of a year, at which the rent was payable. This statute I suppose is *common law* here. It is surely in accordance with justice. See *Bac. Ab., title Rent, letter L.*

*Chamberlain*, for the defendant.

GILCHRIST, J. In this case the term commenced on the first day of April, 1832, and the lessee has covenanted that he will pay the rent in yearly payments. The rent, therefore, became due on the first day of April, 1833, and on each succeeding first day of April during the continuance of the term. Where there is no express stipulation as to time, rent is payable at the end of the year. 3 *Kent's Com.* 374; 1 *Hill's Abr.* 154, § 41.

The question presented by this case is, whether the rent

for the year ending on the first day of April, 1842, can be apportioned in respect of the time.

One of the earliest cases, and which has for a long time been considered a leading case on this subject, is *William Clun's case*, reported 10 *Coke* 127, and *Cro. Jac.* 310. This case has often been referred to and considered an authority for the position that such an apportionment cannot be made. It was an action of debt for rent, brought by the executor of Ann Breather, on a lease for fifty years, provided the lessor should so long live. The rent was payable at the four usual feasts, viz.: Christmas, Annunciation, St. John's and Michælmas, " *vel infra tresdecem septimanas proxim' post quemlibet præd' dierum festival' per æquas et æquales portion'*." The lessor died on the 2d day of April, i. e. eight days after the feast of the Annunciation. The point to be determined, says Croke, is " whether this rent be due, she dying before Michælmas, and before the end of the said thirteen weeks."

Lord Coke, in his report, after stating that the judgment of the court was against the action, goes on to say, " and because *duo sunt instrumenta ad omnes res confirmandas et oppugnandas, ratio, et auctoritas*, first I will report the reasons of this resolution, and then divers authorities in point."

He then states three reasons, the first of which amounts to this, that the alternative is for the benefit of the lessee, and because the last day of payment is most beneficial to the lessee, therefore that will be taken to be the day, unless something to the contrary appear.

The second reason is, in substance, that the lessee, by not paying on the first day, has elected to pay on the other ; that is, at the end of the thirteen weeks after.

The third reason is, because the rent is issuable out of the land—is something restored or paid back out of the profits which the lessee is supposed to have received, and which, therefore, cannot be due till they have been received ; which, by the construction of the contract, is on the day of payment. And then follows this *dictum*, " and that is the rea-

son that if the land is evicted, or if the lease determines before the legal time of payment, no rent shall be paid, for there shall be no apportionment in respect of part of the time, as there shall be upon an eviction of part of the land." This is illustrated by a case put of a lease for years by tenant for life, on an annual rent payable at Easter; if the lessee occupy for three quarters of a year, and then the lease be determined by the death of the lessor, the lessee shall be discharged from all rent, because rent shall never be apportioned in respect of time.

Lord Coke then cites cases illustrating the distinction between payment of money by bond or contract, and payment of rent; and he states the rule to be, that in such case an action does not lie until all the days of payment have passed, but that an action for rent will lie as soon as each day of payment has passed.

We have stated concisely, but substantially, what we understand his reasons to be. His authorities are all directed to the point, that the day of payment being in the alternative, that is, at Michælmas, or within thirteen weeks thereafter, and the tenant not having paid at Michælmas, the legal day of payment was the last of the two days.

It is clear that *Clun's case* was no case of apportionment, and an enquiry into that question was not necessary for the decision, because the whole quarter's rent was due, if anything. It may be suggested whether it be not probable that the ground on which it went was, that, the covenant running with the land, the executor could have no action unless the covenant were broken in the life time of the testator. A covenant to pay rent runs with the land, and no action could lie upon it at common law for a breach after the testator's death. And if the lease determined with the death of the lessor, the heir, or remainder-man, could have no action, because, the lease being determined, he could have no interest under it. *Brudnell* vs. *Roberts*, 2 *Wils.* 143; *Hammond on Parties* 152; 1 *Chitty's Pl.* 14.

But although the judgment, considering the particular facts in *Clun's case*, might not, standing alone, be an authority for the doctrine that rent cannot be apportioned in respect of time, still the reported case, containing as it does the doctrine of so great a lawyer as Lord Coke, has been followed as an authority by eminent judges for many years. In *Paget* vs. *Gee*, *Ambler* 198, *Burns' Justice*, *Distress, sect.* 18, Lord Hardwicke said, "if tenant for life, or any who had a determinable estate, died but a day before the rent reserved on a lease of his became due, the rent was lost, for no one was entitled to recover it. His representatives could not, because they cou!d bring only an action for use and occupation; and that would not be where there was a lease, but debt or covenant, nor could the remainder-man, because it did not accrue in his time. *Jenner* vs. *Morgan*, 1 *Peere W.* 392; *Edwards* vs. *Countess of Warwick*, 2 *Peere W.* 176; *Huy* vs. *Palmer, Ibid.* 502.

A lease for years was made by a rector, reserving rent at Michælmas, which became void in March by his death. The new incumbent, at the Michælmas next after he was inducted, received the rent from the preceding Michælmas, upon which the executors of the deceased rector filed a bill for an apportionment, which, under the circumstances of the case, was decreed. But Lord Eldon, in the course of his judgment, remarked, "it is clear the incumbent, having thought proper to make this lease, the rent payable the last Michælmas preceding his death is all that in law he is entitled to receive, and he could set up no demand for tithes, nor for rent, before the day on which it was made payable under the demise." *Hawkins* vs. *Kelly*, 8 *Vesey* 308. This remark, like the doctrine of Coke in *Clun's Case*, may be founded on the principle that, the covenant running with the land, the executor could have no action, unless the covenant were broken in the lifetime of the testator. The same result follows where the lessee is evicted. As in strictness the tenant has all the day to pay the rent, it is not due and recoverable before midnight.

*Duppa* vs. *Mayo*, 1 *Saund.* 287. And, therefore, if one lease land for years, reserving rent yearly, and before the expiration of the year the lessee be evicted, the lessor shall have no rent, for it shall not be apportioned in respect of time. *Annua nec debitum judex non separat. Countess of Plymouth* vs. *Throgmorton*, 1 *Salk.* 65. The same principle is stated by Comyns and Cruise. At common law, if a tenant for life died before the day on which the rent became due, where the lease determined by the death of the tenant for life, his executors could not claim an apportionment of the rent, nor could the remainder-man or reversioner claim that part of it which accrued during the life of the tenant for life, so that the lessee paid nothing. *Com. Dig., Rent,* (B, 9 ;) 3 *Cruise* 350. The digests and the text books rely upon *Clun's Case* as the foundation of their statements on this point.

We are not aware that any change was made by acts of parliament passed before our Revolution, in the common law on this subject, which could affect the decision of this case. To remedy the hardship arising from the fact that the tenant was not bound to pay any rent to the representatives of the lessor for the time he had enjoyed the profits of the land, the *Statute* 11 *Geo. II., ch.* 19, was passed. After reciting the grievance to be remedied, which arose from the death of the lessor, having only an estate for life before or on the day when the rent became due, the fifteenth section provided, that where any tenant for life should die before or on the day on which any rent was reserved, on any demise which determined on his death, his executors might recover of the under-tenant a proportion of the rent, according to the time the lessor lived of the last year.

The case before us does not come within the remedial effect of the statute. It does not appear that Isabella Perry was tenant for life; and if she died, her estate cannot be damnified, if the defendant should not pay the rent ; nor was she the lessor, nor did the defendant hold under her. It is

only to the executors of the tenant for life and lessor that the action is given to remedy the hardship suffered by the estate which they represent, and the plaintiff who occupies these positions, that of a tenant for life and lessor, is still living. Although the hardship is as great in one case as in the other, the statute does not seem to comprehend a case where the lessor is living, and is tenant *pur auter vie*, and where the lease determines by the death of the *cestui que vie.* It is also left doubtful upon the authorities, whether the statute extends to the leases of tenant in tail, where such leases, not being made pursuant to the enabling statute, are void as against the remainder-man, and consequently expire upon the death of the tenant in tail, although the hardship is as great there as in any case. *Paget* vs. *Gee, Amb.* 198 ; *Vernon* vs. *Vernon,* 2 *Br. Ch. Rep.* 659.

It seems, from an examination of the authorities, that the ancient doctrine of the common law was, that no contract could be apportioned; e. g., if a servant hired himself for any given term, and his employer died before the day of payment for his services, no action would lie, because there could be no apportionment in respect of part of the time. 10 *Rep.* 128, *b*, citing the Year Books. *Countess of Plymouth* vs. *Throgmorton,* 1 *Salk.* 65.

It was held by the court of common pleas so late as 1791, that the action of debt will not lie upon a promissory note, until all the days of payment be passed. *Rudder* vs. *Price,* 1 *H. Bl.* 547.

But the case of rent was always an exception, it being held, as stated in *Clun's Case,* that an action of debt would lie as soon as each day of payment was passed. The rule that a contract could not be apportioned, was further limited in the case of rent, by the principle that if the lessee had been evicted by title paramount from a part of the land, the rent should be apportioned as to quantity of estate. *Co. Litt.* 148 ; *South* vs. *Malings, Cro. Jac.* 160.

The effect of this common law doctrine upon a lease for

years, with rent payable on given days, was, that it was treated as a series of contracts; as if by one instrument the land had been leased from Christmas to Annunciation, and by another instrument, from Annunciation to Midsummer, &c., and thus considering the lease as including so many separate contracts, the doctrine that a contract could not be apportioned was applied to it. Admitting this to be sound in the case of a lease for years without any qualification, if this were an open question, would the rule be applicable to a lease containing a proviso that it should determine on the happening of a particular event? Should not the natural construction be, that this was a contract to pay proportionally in case the lease should determine between the days of payment? Such would seem to be the law, unless the authorities have settled the point the other way.

Upon considering the question, we are of opinion, that whether *Clun's Case* required a decision of the point or not, the doctrine of Lord Coke, followed and recognized as it has been by so many eminent judges, and for so many years, settles the point that rent, in a case like the present, cannot be apportioned as to time. Even without the authority of Coke, we should hesitate long before rejecting a doctrine stated as law by Lords *Hardwicke, Cowper* and *Eldon*. And we find their opinion followed in this country. In the case of *Wood* vs. *Partridge*, 11 *Mass*. 493, it was held that a covenant to pay rent quarterly creates no debt until the day of payment arrives. In the *Fitchburg Factory* vs. *Melvin*, 15 *Mass. R.* 270, it was held that if annual rent be reserved, and the lessee, before the day of payment, be evicted by title paramount to that of the lessor, covenant will not lie for the rent accruing before the eviction. And Mr. Chancellor Kent says, 3 *Comm.* 470, "the rule at common law was that neither law nor equity would apportion rent as to time; and therefore if the tenant for life gave a lease for years, rendering a yearly rent, and died in the course of the year, the rent could not be apportioned, and the tenant would go free of

rent for the first part of the year. The principle was, that an entire contract could not be apportioned," &c. He refers to *Bro Abr., title Apportionment, pl.* 7, 26 ; *Clun' s Case*, 10 *Rep.* 127 ; *Jenner* vs. *Morgan*, 1 *P. Wms.* 392, &c.

*Judgment for the defendant.*